UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOHNNY FLORES,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 10-00379 AJW<br><br>MEMORANDUM OF DECISION |

    Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

    Plaintiff filed his benefits applications on February 22, 2006, alleging disability beginning on January 19, 2006. [JS 2; Administrative Record ("AR") 100-104, 111-115]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled. [AR 8-23]. The ALJ found that plaintiff had a severe combination of impairments consisting of a back disorder, left knee disorder, mood disorder not otherwise specified ("NOS"), and an anxiety disorder NOS. [AR 10]. The ALJ determined that plaintiff retained the residual

functional capacity ("RFC") to perform a restricted range of sedentary work. [AR 11-12]. The ALJ concluded that plaintiff was not disabled because his RFC did not preclude him from performing work available in significant numbers in the national economy. [AR 12-23].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Treating source evidence and development of the record**

Plaintiff contends that the ALJ failed properly to consider the opinion of the Commissioner's treating physician, David Lanum, M.D., and that the ALJ failed to fully and fairly develop the record with respect to Dr. Lanum's opinion.

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). If contradicted by the opinion of another doctor, a treating or examining physician's opinion can be rejected only for specific and legitimate reasons that are based on substantial evidence in the record. Batson

1  v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144,
2  1148-1149 (9th Cir. 2001); Lester, 81 F.3d at 830-831.
3        The ALJ provided a thorough summary of plaintiff's treatment records from Arrowhead Regional
4  Medical Center ("ARMC"), where plaintiff was seen by Dr. Lanum and other providers, both before and
5  during the alleged period of disability. Dr. Lanum treated plaintiff for a variety of complaints, including
6  back and knee pain, depression, and anxiety. [See AR 13-18, 262-283, 299-367, 400-426, 428-510].
7        Plaintiff takes issue with the ALJ's finding that

> [t]he disability forms that Dr. Lanum submitted to the DMV and other agencies are not entitled to significant weight. Social Security Regulations provide that a decision by any non-governmental agency or any other governmental agency that an individual is "disabled" is based on the rules of that agency. The Social Security Administration, however, makes a determination of disability on Social Security law. Hence, a decision by any other agency, either non-governmental or governmental, that a claimant is disabled or unable to work is not binding on the Administration.

[JS 3 (quoting AR 19)].

      Plaintiff argues that it is not clear from the record which disability opinions the ALJ is describing. Plaintiff asserts that the record does not contain copies of the disability forms completed by Dr. Lanum, precluding him from adequately addressing the ALJ's rejection of those opinions. [JS 3-4]. Plaintiff also argues that the ALJ did not articulate specific, legitimate reasons based on substantial evidence for rejecting those opinions.

      Dr. Lanum's treatment notes indicate that when plaintiff was seen on October 17, 2005, he

> [r]equest[ed] a disabled person's placard form be filled out as a result of his herniated disk. Apparently, he had such while he was in New Mexico and was to have it filled out by his surgeon, [but his] orthopedic surgeon did not fill the form out correctly, and it was returned to him. He would like to have it repeat filled out here.

[AR 306]. On that date, Dr. Lanum's diagnoses were:

    1. Depression, improving but with ongoing followup from psychiatry.

///

3

>    2. Hypertension, suboptimal control, secondary to medication lapse.
>
>    3. The patient with chronic herniated disk and knee issues. At this point, disabled person's placard would seem appropriate to this patient. See copy in chart.

[AR 306]. A copy of the disability form is not included in the record.

Dr. Lanum also made references to requests by plaintiff to fill out other forms. In April 2006, plaintiff saw Dr. Lanum for a follow-up on blood work. Dr. Lanum remarked that plaintiff "[i]n general, feels well," but "needs the form filled out for disability purposes." [AR 412]. Dr. Lanum's diagnoses were history of diskogenic back disease; hypertension, suboptimally controlled; and polyuria, "probably secondary to medication . . . ." [AR 412]. Dr. Lanum referred plaintiff to opthamology due to some complaints of blurring, increased plaintiff's blood pressure medication, recommended that plaintiff follow up with psychiatry for complaints of anxiety, and "filled out [form] per patient, see copy in chart dated today." [AR 412]. The record, however, does not include a copy of the form that Dr. Lanum referenced.

During a May 2006 office visit for complaints of a foot rash and eye itch, plaintiff told Dr. Lanum that he needed "a form filled out for his Bank of America plan." [AR 411]. In the section of his report entitled "Plan," Dr. Lanum prescribed medication for plaintiff's foot and eye and added that he "filled out [form] for the patient. See copy in chart." The record does not include a copy of the form.[AR 411].

In October 2006, Dr. Lanum noted that plaintiff "needs a transitional assistance form filled out." [AR 405]. Plaintiff said that he felt "more fatigues than usual" but reported "[n]o other acute issues." Dr. Lanum's diagnoses were hypotestosternia, hypertriglyceridemia, and a history of gastroesophageal reflux disease without evidence of ulcer. [AR 405]. Dr. Lanum prescribed Lopid (gemifibrozil) for plaintiff's elevated triglycerides, ordered a testosterone injection, and noted that plaintiff would follow up when he was due for a refill of OxyContin for pain. [AR 405]. Dr. Lanum did not indicate that he had completed the form as requested by plaintiff.

In December 2006, Dr. Lanum noted that plaintiff "wants the form filled out due to his inability to continue to work due to his chronic pain and depression." [AR 401]. Dr. Lanum's diagnoses were: "[h]istory of chronic depression, bipolar disorder, and panic disorder," "[h]istory of diskogenic disease," and "[h]ypotestosternia." [AR 401]. Dr. Lanum refilled plaintiff's prescriptions, administered a testosterone injection, ordered a stool test, and directed plaintiff to follow up in one month or sooner, if problems arose.

[AR 401]. He did not indicate that he had completed the form for plaintiff.

The ALJ permissibly concluded that Dr. Lanum's references to the disabled person's placard form and the other forms that plaintiff asked him to fill out are not entitled to significant weight. As the ALJ noted, "[a] decision by any nongovernmental or any other governmental agency about whether you are disabled or blind is based on its rules" and "is not binding on" the Commissioner. 20 C.F.R. §§ 404.1504, 416.904. A certification that plaintiff is entitled to a disability placard by the California Department of Motor Vehicles ("DMV") is not an opinion that plaintiff is disabled under the Social Security Act.[1] [AR 19]. While Dr. Lanum said that issuance of a disability placard was "appropriate," he did not say or suggest that plaintiff was disabled within the meaning of the Social Security Act. Moreover, plaintiff himself does not allege that he was disabled for social security disability purposes in October 2005, when he asked Dr. Lanum to sign the DMV form. Plaintiff alleged that his disability began on January 19, 2006, when he was "laid off" from his job because he "miss[ed] a lot of work" due to his disability.[2] [See AR 170-171].

Dr. Lanum also indicated that he signed disability forms plaintiff in 2006 for "transitional assistance" and for a "Bank of America plan." It is not clear precisely what programs those terms refer to, but it is clear that they do not refer to social security disability benefits. Dr. Lanum's progress notes from that time period do not suggest that he considered plaintiff disabled within the meaning of the Social Security Act.

Plaintiff argues that he is "entitled to know what [disability] forms the ALJ is specifically rejecting,"

---

[1] A California driver may qualify for a disabled person placard by completing an application containing a certification by a physician or other authorized medical provider that the person "has lost, or has lost the use of, one or more lower extremities or both hands, or who has significant limitation in the use of lower extremities, or who has a diagnosed disease or disorder which substantially impairs or interferes with mobility . . . ." Cal. Veh. Code § 295.5; see Cal. Veh. Code § 22511.55; see also California DMV website, "Disabled Person Parking Placard or Plates FFVR 7," available at http://dmv.ca.gov/pubs/brochures/fast_facts/ffvr07.htm (last visited Aug. 15, 2011).

[2] Plaintiff's testimony about the reason he stopped working was inconsistent with the statements on his benefits application. At the initial administrative hearing in February 2008, during which plaintiff was represented by counsel, plaintiff testified that he was fired from his last job, as a host at San Miguel Indian Casino, because his employer found out that plaintiff had been convicted of a misdemeanor count of domestic abuse in New Mexico. [AR 83]. Plaintiff also said that he complained to his employer that his job was starting to feel stressful, but he testified that he did not think that was the reason he was fired. Instead, plaintiff agreed with the ALJ's observation that "it appears that you were let go from your last job, not because you couldn't do the work, but because they found out something in your record that you didn't tell them." [AR 83-84].

and that the ALJ breached his duty to develop the record by failing to include those disability forms in the record.  That argument has no merit.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel."  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  However, it is plaintiff's "duty to prove that [he] was disabled"and to provide medical evidence establishing disability.  Mayes, 276 F.3d at 459 (citing 20 C.F.R. §§ 404.1512(a)&(c)).  The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes, 276 F.3d at 459-460.  Where the record is "neither ambiguous nor inadequate to allow for proper evaluation of the evidence," the contention that the ALJ breached his duty to develop the record represents an attempt to "improperly shift [the claimant's] own burden to the ALJ."  Mayes, 276 F.3d at 459-460.

Plaintiff is not in the dark about what the missing disability forms say, as he disingenuously suggests.  Plaintiff gave those forms to Dr. Lanum to sign, and Dr. Lanum returned the completed forms to plaintiff to submit to the appropriate agency.   Plaintiff—who was represented by counsel during administrative hearings in February 2008 and May 2008—had the obligation to come forward with copies of those forms, or to ask the ALJ for help in obtaining them, if needed.  Plaintiff submitted additional evidence prior to the supplemental hearing in May 2008, and he could have drawn the ALJ's attention to the need for the disability forms at that time.  Cf. Duenas v. Shalala, 34 F.3d 719, 722 (9th Cir. 1994) (holding that the ALJ did not violate her duty to develop the record where "[n]o request was made of the ALJ to develop the record, and it is unclear what further the ALJ could have done . . . ."), cert. denied, 514 U.S. 1051 (1995).  Plaintiff also submitted additional evidence to the Appeals Council in connection with his request for review, including a November 2008 letter from Dr. Lanum.[3]   Even then, plaintiff said nothing about the disability forms.

The record as a whole is neither ambiguous nor inadequate to allow for proper evaluation of the evidence.  The medical evidence in this case is extensive.  Plaintiff's medical history, diagnoses, and treatment are thoroughly documented, and the ALJ provided a detailed, comprehensive summary of the

---

[3] Plaintiff does not contend that Dr. Lanum's letter provides a basis for changing the ALJ's decision.

medical record in support of his findings. Plaintiff's argument that the ALJ failed to develop the record represents an impermissible attempt to shift his burden to the ALJ. See Mayes, 276 F.3d at 459-460.

**Consultative examining physician's opinion**

Plaintiff contends that the ALJ improperly evaluated the opinion of one of the Commissioner's consultative examining psychiatrists, S. Paul DeSilva, M.D.

On May 9, 2006, Dr. DeSilva conducted a psychiatric examination. [AR 368-372]. Dr. DeSilva diagnosed major depressive disorder, recurrent. [AR 371]. He gave plaintiff a current and past-year Global Assessment of Function ("GAF") score of 45.[4] He concluded that plaintiff had "some work skills of a limited nature," with the following mental limitations; a moderately impaired ability to relate to coworkers, supervisors, and the public; a moderate to severe impairment in the ability to concentrate, remember, and carry out simple instructions; a moderate impairment in the ability to respond to customary work pressures and in the ability to relate to changes at work or the demands of work. Dr. DeSilva also said that plaintiff has little patience or persistence and freedom from distraction when doing a project. [AR 372].

In his summary of Dr. DeSilva's examination report, the ALJ mentioned all of the mental functional limitations found by Dr. DeSilva except the finding that plaintiff has little patience, persistence and freedom from distraction. [AR 17]. The ALJ also summarized the report of another consultative examining psychiatrist, Linda Smith, M.D., who examined plaintiff in July 2006. [AR 17-18, 381-388]. Dr. Smith's findings and opinion differ markedly from those Dr. DeSilva rendered just a couple months earlier. Dr. Smith remarked that plaintiff's history and description of his symptoms was vague and sounded rehearsed in some respects. When she asked follow up questions, plaintiff was unable to supply supporting details. She suspected that plaintiff was exaggerating his symptoms or attempting to manipulate the examination, and concluded that he lacked credibility. Dr. Smith gave plaintiff no psychiatric diagnosis and opined that

---

[4] A GAF score of 45 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)); see also Morgan, 169 F.3d at 598 n.1("Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient.");

he had no work-related mental functional limitations. She gave plaintiff a GAF score of 80.[5]

Because both Dr. DeSilva and Dr. Smith were consultative psychiatrists who based their opinions on independent examination findings, Dr. DeSilva's opinion does not "trump" Dr. Smith's contrary opinion. Moreover, an ALJ is not obliged to discuss, or provide a rationale for rejecting, every discrete finding made by an examining physician. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) and citing Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984)). The ALJ reasonably attempted to reconcile the consultative examiners' "divergent opinions" by eliciting the opinion of a medical expert, clinical psychologist David Glassmire, and asking him how the conflict should be resolved. [See AR 74, 77]. Dr. Glassmire discussed the consultative examination findings and other evidence in the record. He explained that the medical evidence did not convincingly support either consultative examiner's opinion, but instead warranted an "opinion somewhat in between" those of Dr. DeSilva and Dr. Smith. [AR 76]. Dr. Glassmire opined that plaintiff had a mood disorder NOS, and an anxiety disorder NOS that together resulted in the mental functional limitations subsequently adopted by the ALJ in his RFC finding. [AR 11-12, 19-20, 74]. Dr. Glassmire testified that a limitation to simple, repetitive tasks, no tasks requiring hypervigilance, and only occasional contact with the public, co-workers, and supervisors would "ke[ep] the job low stress from a psychological perspective" and adequately accommodate plaintiff's mental impairments. [AR 74]. The ALJ adopted Dr. Glassmire's opinion. [AR 11, 17-19].

Because Dr. Glassmire's opinion was supported by medical evidence in the record, the ALJ did not err in crediting his opinion and rejecting the consultative examiners' widely divergent opinions, including the specific functional limitations assessed by Dr. DeSilva. See Tonapetyan, 242 F.3d at 1148 ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when

---

[5] A GAF score of 71 to 80 signifies that if symptoms are present, they are transient and expectable reactions to psychosocial stressors, representing no more than a slight impairment in social, occupational, or school functioning. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)).

it is consistent with other independent evidence in the record.") (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)).

**RFC finding**

Plaintiff contends that the ALJ's RFC finding is defective because it "arbitrarily omitted" a limitation consistent with examining physician Dr. DeSilva's finding that plaintiff has little patience, persistence, or freedom from distraction when doing a project. [See AR 17].

For the reasons described above, the ALJ properly resolved the conflict between Dr. DeSilva's opinion and that of Dr. Smith by adopting the Dr. Glassmire's opinion, which represented a middle view regarding plaintiff's mental impairments and mental functional limitations. Therefore, the ALJ's RFC finding is not defective because it excludes one or more limitations posited by Dr. DeSilva.

**Hypothetical questions**

Plaintiff contends that the ALJ did not pose a proper hypothetical question to the vocational expert because none of the ALJ's hypothetical questions included the limitations contained in Dr. DeSilva's consultative examination report, including specifically the limitation that plaintiff has little patience, persistence, or freedom from distraction when doing a project.

Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886; Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

For the reasons described above, the ALJ permissibly rejected Dr. DeSilva's opinion in favor of the opinion of Dr. Glassmire. The ALJ posed a hypothetical question to the vocational expert that accurately reflected the mental functional limitations described by Dr. Glassmire, as well as physical limitations that were consistent with the record. [AR 22-23, 63-65]. The vocational expert testified that a hypothetical person with those limitations could perform sedentary, unskilled jobs available in significant numbers in the national economy, including the jobs of small item assembler, charge account clerk, and cashier. [AR 64-65]. Accordingly, the ALJ's hypothetical questions were not defective, and substantial evidence supports the ALJ's finding that alternative jobs within plaintiff's RFC exist in significant numbers in the national economy.

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

August 23, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge